Our last case today, number 241122, Luis Feliciano-Munoz, et al. v. Fred J. Rebarber-Ocasio. Counsel for appellant, please introduce yourself on the record to begin. May it please the court, my name is Jose R. Olmos-Rodriguez on behalf of appellant in this case. May I reserve three minutes for rebuttal? You may. The practical result of upholding the judgment against Feliciano on director liability will be to derogate the Puerto Rico Law Corporation's Article 4, which provides for the presumption that the director acted in good faith and did his best effort. And also will take away all the meaning of what gross negligence entails in finding liability of other records. On the other hand, Feliciano's claim against Rebarber for breach of contract, although Judge Woodcock found that there was weighty evidence about the similarities of the parts and equipment before and after, respectfully I believe that Judge Woodcock mistakenly concluded that those expenses were not operational expenses. Judge Woodcock, although he acknowledged that paying a gas bill will be an operational expense, he has mistakenly concluded that not repairing airplanes for an airplane operation is not an operational expense. Counsel, Judge Woodcock went to great detail to, I mean, you argue the unmistakable clarity of the purchase and sale, I'm sorry, you argue the unmistakable clarity of the purchase and sale agreement to support your theory of contract breach. Judge Woodcock in his decision on the motion for new trial goes to some length to point out that that clarity is not there. There are ambiguities, there are, one could argue the provisions you cite differently than you argue it. His point being that this was a jury issue. And this is his theme throughout his decision. This is a jury issue. They rejected your interpretation. There was a breach and adopted a different interpretation. What, why doesn't that dispute characterize a classic jury issue about the, what the contract means with respect to how operational expenses should be covered? The contract, it makes, has different paragraphs addressing different kinds of expenses, accrued expenses, operating expenses, and other expenses like financial expenses. But the jury, after the judge allowed Rebarber to, his hearsay about Feliciano having ordered Molina to falsify records, the judge allowing the irrelevant testimony about silly errors on documents that were submitted on the rolls by Feliciano, and his comments that Feliciano had been changing his version without any support on the record. Well, the jury was not going to believe Feliciano after that. There was no way that. Well, that's a different, you're arguing all these errors on evidentiary rulings. That seems to be very, you're saying those errors so polluted the trial in effect that the jury could not make a fair judgment about this dispute? Yes, Your Honor, because as to the director's liability, there is no evidence at all across the evidence. And on Feliciano's claim against Rebarber for breach of contract, Feliciano did not challenge the fact that it was the same part or almost identical parts. He had six witnesses, including himself, to challenge those lists, and he didn't do that. So Rebarber grounds his position on the director's liability that it was harmless, whatever happened. But it cannot be harmless on the absence of any evidence of gross negligence, and in the absence of a challenge to his claim against Rebarber. Any further points? I mean, you have your brief so that you don't have to say more. Yeah, you know, those will be my salient points. Thank you very much. Thank you, counsel. Attorney Mercado-Rivera, please come up and introduce yourself on the record. Mercado-Rivera, I'm the attorney for the appellee, Mr. J. Rebarber, in this case. Your Honor, obviously, I defer from a brother of counsel, Olmo. I think that the jury had enough evidence of the gross negligence of Mr. Feliciano. Mr. Feliciano, and he was part of the evidence, admitted that he spent $35,000 for a video equipment for his home. He paid his personal attorneys with the company money. He paid his personal consultant in accounting with the company money. He owed Rebarber $250,000, so he took the best airplane in the fleet and sold it to pay Rebarber for $393,000, and he deposited in the account of the company only $9,975. He also couldn't dispute, he didn't prove against his chief pilot, Mr. Fernandez, who testified that Mr. Feliciano asked him to not write in the airplane logs so the airplanes wouldn't be grounded. So that's something very, very grave, very important. So there were other, for example, Mr. Feliciano sold, not sold, he gave away the certificates of the four remaining airplanes in the fleet. He transferred those certificates to his personal corporation, saying that he was repaying back Mr. Rebarber. But the thing is that he never consulted Rebarber, he never called a meeting of shareholders, he never issued a corporate resolution for anything that he did. And the reality is that he is saying that he was repaying some loans that he personally requested from his company, personal company, and from himself. But there's no evidence. Did the balance of the corporation call for such resolutions or meetings before those kinds of decisions could be made? If I understand, correct me. The bylaws of the corporation. Oh, the bylaws doesn't, the bylaws say the opposite. The bylaws say that the president of the company can take loans from recognized financial entities, which he is not, and his personal corporation of advertising was not either. So that was another violation. And not only that. But did the bylaws call for the passage of resolution before the president of the corporation could take certain actions, or did it call for resolutions or meetings? No meetings whatsoever, no resolutions, nothing. Not did he have meetings or resolutions, did the bylaws require that? Yes, they also required that. They needed a trail of documents to sustain the needs to take the loans, which there isn't here any. And not only that, his wife, Mrs. Bengoa, which was also a part of this case, she testified that she was aware and she knew all the checks that he took, that her husband took to repay the loans. And she said that they were issued after June 3rd, 2017, which means after the fatal accident of the airline. So it wasn't before, like he was saying, that he was taking loans because he was fixing airplanes that rebarber left him with needing repairs. And the thing is that this court on the previous judgment, the summary judgment, sustained the district court that those airplanes kept flying after the buy-sell agreement. They kept flying without any interruption. So what he said that he had to ground the airplanes is not sustained on any document, the log books, any testimony. So I think that it is clear that there wasn't any breach of contract. And also there wasn't any, well, the opposite. There was, Mr. Feliciano was grossly negligent managing the airline. Counselor, can you explain to me why an evaluation of the worth of a corporation, why in establishing that value, the goodwill that the corporation has earned would not be part of that valuation? Why is goodwill an entirely separate asset, if you will, from what otherwise would be the value of the corporation? This is obviously an argument that is raised. And as a matter of common sense, it seems odd that goodwill would not be considered as part of the evaluation of the worth of the corporation. Appellee had an expert witness in financial matters, Dr. Cao, and he explained that in his testimony. And he was not cross examined. The appellant didn't cross examine him. And he explained that in technical words. Okay. I cannot explain it as he did. But obviously, the goodwill, we all know that is that experience, that thought of the people, the public, of how the airline is operating. And there's another issue, which is what the airline with that experience could make, keep flying and keep developing and keep doing business. And that is something that was interrupted. And it wasn't because of the accident. The accident was one year before the FAA revoked, made an order of revoking the certificate as an emergency. And it was because some other investigation that the FAA conducted. Most of the airlines that had accidents keep on flying. And the same happened here. This airline kept flying for almost a year. It was because of the other investigation that the FAA made on the airline. And Mr. Feliciano, to put the cherry on top of the gross negligence, he didn't challenge that revocation. So he just closed the airline. He had Mr. DeBarber who wrote the manuals. Mr. DeBarber had an excellent relationship with the FAA, with the industry. He could use Mr. DeBarber as a consultant to try to challenge that revocation. And he didn't do it. Anything else? Thank you. Okay. Thanks to you. Thank you, counsel. Attorney Olmo, please reintroduce yourself on the record. You have three minutes, Roberto. Attorney Olmo again. Your Honor, the bylaws do not require a resolution by the President for this act that he did. Second, none of what Mr. Mercado has said about gross negligence even relates to the closing of the company. The closing was because the FAA closed it because of the accident. It was not because Feliciano bought an audiovisual or because he paid his attorney. And on the other hand, all those sums of money are less than what Feliciano put from his pocket into the company to survive what he found when he assumed control, that he found a decapitalized company with no cash and in need of several repairs that came from before. Not that happened immediately when he bought the company. Thank you. Thank you. Thank you, counsel. That concludes arguments in this case. All rise.